IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-587-FL

| | |
|---|---|
| JOHN THOMAS NACKAB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| EARL R. BUTLER, Sheriff; SGT. TIM | ) |
| BRITT, Supervisor; C.L. HAMILTON; | ) |
| JOHN MCRAINEY; ROY COOPER, | ) |
| Attorney General; JOHN J. | ) |
| ALDRIDGE, III; ED GRANNIS, | )   ORDER |
| District Attorney; DEBRA K. PRICE; | ) |
| W. DAVID SMITH; SHARON R. | ) |
| SMITH, ADA; KARA HODGES, | ) |
| ADA; SUE GENRICH BERRY; BETH | ) |
| RUPP, Social Worker III; LELIA | ) |
| GOODE-EATMON, Supervisor; | ) |
| ROSEMARY ZIMBREMAN, Director; | ) |
| DR. LAURA GUTMAN; and JAMES | ) |
| FLOYD AMMONS, JR., | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on the memorandum and recommendation ("M&R") of Magistrate Judge Kimberly A. Swank, pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), wherein it is recommended that the court dismiss plaintiff's complaint on frivolity review pursuant to 28 U.S.C. § 1915A(b). Plaintiff filed objection to M&R. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation and dismisses the complaint.

## BACKGROUND

*Pro se* plaintiff, who is currently incarcerated, filed complaint October 7, 2014. Plaintiff brings claims pursuant to 42 U.S.C. §§ 1983 and 1985(2), alleging that his Fourth, Sixth, and Fourteenth Amendment rights were violated in the course of his arrest, prosecution and convictions for the North Carolina offenses of first-degree child rape, N.C. Gen. Stat. § 14-27.2, first-degree sexual offense with a child, N.C. Gen. Stat. § 14-27.4, and indecent liberties with a child, N.C. Gen. Stat. § 14-202.1. Plaintiff seeks expungement of his name from all state maintained records, as well as compensatory and punitive damages.

In relevant part, the complaint alleges as follows. On March 4, 2008, a woman filed complaint with the sheriff's department in Cumberland County, North Carolina, alleging that plaintiff had sexually assaulted her daughters. Three days later, the investigation was assigned to defendant Detective C.L. Hamilton ("Hamilton") with the Cumberland County Sheriff's Department ("Sheriff's Department") and defendant Beth Rupp ("Rupp") with the Cumberland County Department of Social Service ("DSS"). Defendants Hamilton and Rupp interviewed the alleged victims. On April 8 and 15, 2008, defendant Laura Gutman, a doctor with the Southern Regional Area Health Education Center, performed a physical examination of the alleged victims. On June 11, 2008, arrest warrants issued for plaintiff. He was arrested the following day.

At the relevant times, defendant Rupp's supervisor was defendant Lelia Goode-Eatmon ("Goode-Eatmon"). Defendant Rosemary Breman ("Breman") was director of the DSS. Defendant Sgt. Tim Britt ("Britt") was immediate supervisor of defendant Hamilton, and defendant Earl R. Butler ("Butler") was the Sheriff of Cumberland County.

2

On August 25, 2008, defendant Sharon R. Smith ("Sharon Smith"), an assistant district attorney in Cumberland County, secured three indictments against plaintiff. Defendant Kara Hodges ("Hodges"), another Cumberland County assistant district attorney, subsequently conducted additional interviews and amended one of the indictments, extending the timeframe over which the alleged criminal acts occurred by an additional six months. In the months following plaintiff's indictment, twelve Cumberland County citizens wrote defendant Ed Grannis ("Grannis"), the District Attorney in Cumberland County, requesting a review of plaintiff's arrest and indictment. However, defendant Grannis ignored these requests.

On June 2, 2009, plaintiff wrote a letter to defendant Roy Cooper ("Cooper"), the Attorney General in North Carolina, requesting an investigation into his arrest and indictment. Special Deputy Attorney General John J. Aldridge, III ("Aldridge"), responded by letter dated June 10, 2009, explaining that the North Carolina Department of Justice does not have authority to supervise or direct the activities and operations of local law enforcement or other government officials, and could not investigate plaintiff's case on his behalf or represent him. See (DE 7-8). While incarcerated, plaintiff also wrote a letter to defendant John McRainey ("McRainey"), the chief jailer for the Cumberland County Sheriff's Office, "for reasonable access to help." (Compl. ¶ 64). Defendant McRainey did not respond.

Over the course of plaintiff's prosecution, plaintiff was represented by defendants Debra K. Price ("Price") and W. David Smith ("David Smith"), both court-appointed public defenders. Defendant Price did not follow plaintiff's instructions to demand a probable cause hearing or to petition the court for money to obtain a witness to refute the evidence. Defendant David Smith did not review the evidence file against plaintiff, did not petition the court to assert plaintiff's right to

3

have compulsory process to obtain a witness, did not petition the court to assert plaintiff's speedy trial right, and asked for a continuance of trial without consulting plaintiff.

Trial was presided over by the Honorable James Floyd Ammons, Jr. ("Ammons"), a superior court judge in Cumberland County. On July 1, 2010, plaintiff was convicted and sentenced to 697-856 months imprisonment. He appealed, and defendant Sue Genrich Berry ("Berry") was appointed appellate counsel. However, defendant Berry did not follow plaintiff's instructions on what issues to raise on appeal. Plaintiff's conviction was affirmed by the North Carolina Court of Appeals and the North Carolina Supreme Court.

The M&R recommends the court dismiss plaintiff's claims pursuant to 28 U.S.C. § 1915A(b). Its analysis consists of three parts. The first part addresses claims asserted against particular defendants. The M&R recommends dismissal of plaintiff's claims against defendantAmmons under the doctrine of judicial immunity. The M&R similarly recommends dismissal of the claims against defendants Grannis, Hodges, and Sharon Smith under the doctrine of prosecutorial immunity, because the actions alleged involved prosecutorial functions. The M&R also recommends that plaintiff's § 1983 claims against defendants Price, David Smith, and Berry be dismissed because these defendants were all defense attorneys and did not act under color of state law.

The second and third parts of the M&R's analysis address particular claims. The second part addresses plaintiff's section 1985(2) claim, finding that plaintiff fails to allege facts sufficient to establish a conspiracy to violate plaintiff's rights. The third part of the M&R's analysis addresses plaintiff's section 1983 claim, construing it to consist of two separate claims premised in malicious prosecution and false arrest. The M&R recommends the court dismiss the malicious prosecution

4

claim because plaintiff did not allege and prove that the prior criminal proceeding terminated in his favor, under Heck v. Humphrey, 512 U.S. 477 (1994) . It recommends dismissal of the false arrest claim under Rooker-Feldman doctrine. See generally District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

**DISCUSSION**

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Prison Litigation Reform Act of 1996 ("PLRA") directs the court to identify "cognizable claims or dismiss the complaint, or any portion of the complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). A complaint may be found frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A complaint fails to state a claim if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," sufficient to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). In evaluating whether a

5

claim has been stated, "[the] court accepts all well-pled facts as true and construes those facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement [,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir.2009) (citations omitted).

For the reasons below, plaintiff has failed to state a claim upon which relief may be granted.

1.      Judicial Immunity

Plaintiff first objects to the dismissal of the claims against defendant Ammons. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." Stump v. Sparkman, 435 U.S. 349, 356 (1978). Rather, there are two limitations to absolute judicial immunity: 1) "a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity," and 2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11-12 (1991).

Plaintiff's allegations against defendant Ammons assert that the court never had jurisdiction over the case because the warrants issued for his arrest were not supported by probable cause. Plaintiff's objections allege that a June 10, 2013, order issued by defendant Ammons, denying a motion for relief filed by plaintiff, misstated plaintiff's claims. Plaintiff asserts that this misstatment demonstrates that defendant Ammons knew that the state court lacked jurisdiction. Plaintiff attaches what appears to be a portion of his motion for relief, along with the order (Evidence Pack 2) (DE 7-2).

The court discerns no material distinction between the motion and defendant Ammons' characterization of that motion in the order issued June 10, 2013. At any rate, even if the June 2013 order did somehow mischaracterize plaintiff's motion, the issuance of the order was unquestionably a judicial act within the court's jurisdiction. Even if the court wrongly determined that there was probable cause, such determination is an error of judgment, not a jurisdictional defect. See Mireles, 502 U.S. at 12–13 ("If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.' ") (quoting Stump, 435 U.S. at 356). Accordingly, defendant Ammons is immune from liability on these facts and properly dismissed from this case.

2.  Prosecutorial Immunity

Plaintiff next objects to the recommendation to dismiss the claims against the prosecutors who worked on his case: defendants Grannis, Hodges and Sharon Smith ("Prosecutor Defendants"). "Prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" Burns v. Reed, 500 U.S. 478, 486 (1991) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)) (citations omitted). This rule is based on the principle that section 1983 "is to be read in harmony with general principles of tort immunities and defenses," including the scope of common law prosecutorial immunity. Imbler, 418-420. The doctrine of absolute prosecutorial immunity has also been extended to claims under section 1985. Willis v. Blevins, 957 F. Supp. 2d 690, 693 (E.D. Va. 2013); Rhodes v. Smithers, 939 F. Supp. 1256, 1272 (S.D.W. Va. 1995); Cribb v. Pelham, 552 F. Supp. 1217, 1221-22 (D.S.C. 1982); see Burke v. Miller, 580 F.2d 108, 109 (4th Cir. 1978) (finding that Imbler "reaffirms that s[ection] 1983

7

(and, we believe, s[ection] 1985 as well) is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them."). Actions specifically found to be protected by prosecutorial immunity include the "professional evaluation of the evidence assembled by the police," Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993), the decision to proceed with a prosecution, Springmen v. Williams, 122 F.3d 211, 212-13 (4th Cir. 1997), the "preparation for . . . presentation [of evidence assembled by the police] at trial or before a grand jury after a decision to seek an indictment is made," Buckley, 509 U.S. at 273, and even "the knowing use of false testimony at trial and the deliberate suppression of exculpatory evidence." Burns, 500 U.S. at 486.

Plaintiff's allegations against Prosecutor Defendants all concern activities these defendants performed in evaluating evidence against defendant, initiating prosecution, securing and reviewing indictments, and representing the State. These actions fall within the ambit of those "intimately associated with the judicial phase of the criminal process," and are protected by absolute prosecutorial immunity. Burns, 500 U.S. at 486. For these reasons, plaintiff's claims against the Prosecutor Defendants must be dismissed.

3. Defense Attorneys

Plaintiff also objects to the recommended dismissal of his section 1985(2) claims against defendants Price, Smith, and Berry, all of whom were his defense attorneys at some point ("Defense Attorney Defendants").[1] In relevant part, section 1985(2) applies when

> two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

---

[1] Petitioner does not object to the M&R's recommendation to dismiss his section 1983 claims against these defendants, and the court finds no clear error in that portion of the M&R's analysis.

8

42 U.S.C. § 1985(2).[2]

The Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." A Soc'y Without A Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995)). Neither the complaint nor plaintiff's objections offer any allegations that rise above the level of speculation. Plaintiff makes conclusory allegations of conspiracy based merely upon his evaluation of his attorneys' representation, without the support of concrete facts indicating any form of agreement was ever made between these attorneys and anyone else. His section 1985 claims fail. Because both his section 1983 claims and his section 1985 claims against Defense Attorney Defendants must be dismissed, those defendants are dismissed from the case.

    4.    Sheriff's Department, Department of Social Services

Petitioner next objects to the dismissal of the complaint against defendants Butler, Britt, Hamilton, and McRainey ("Sheriff's Department Defendants"), as well as defendants Rupp, Goode-Eatmen, and ZimBerman ("DSS Defendants"). In addition to the analysis provided in the M&R, the court dismisses these claims based upon the following reasons.

Section 1983 "creates a species of tort liability," and the common law's "set of rules . . . . defining the elements of damages and the prerequisites for their recovery, provide the appropriate starting point for the inquiry under § 1983." Heck, 512 U.S. at 483 (citations omitted). Thus, analogy to the elements of state-law torts is appropriate for analyzing certain section 1983 claims. See id.; Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998).

---

[2] The first clause of section 1985 applies to proceedings in federal courts, and does not apply to the instant action.

Plaintiffs' claims against the Sheriff's Department and DSS Defendants may be analogized to the common-law cause of action for false arrest, in that he alleges that his arrest was not supported by probable cause. "At common law, allegations that a warrantless arrest or imprisonment was not supported by probable cause advanced a claim of false arrest or imprisonment." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996). However, so far as plaintiffs' claims against these defendants is premised on false arrest, such claim is barred because "a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant." Porterfield, 156 F.3d at 568. Plaintiff does not allege that the warrants issued for his arrest were facially invalid. Thus, his false arrest claim must be dismissed.

Plaintiffs' claims against these defendants may also be analogized to a claim for malicious prosecution. "Allegations that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for the period after legal process issued, are analogous to the common-law tort of malicious prosecution." Brooks, 85 F.3d at 182. However, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 486-87. Plaintiff does not allege that any conviction or sentence has been reversed or declared invalid, and therefore fails to state a claim for malicious prosecution.

Plaintiffs' complaint suggests that his arrest and prosecution were based on evidence which was manipulated and on the suppression of exculpatory evidence. The Fourth Circuit has held that

10

individuals possess a Fourteenth Amendment Due Process " 'right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity.' " Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir.2005) (quoting Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir.2000)).[3] However, the Constitution does not protect against a deprivation of liberty that results from mere negligence. Daniels v. Williams, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."); see also Robertson v. Elliott, 315 F. App'x 473, 477 (4th Cir. 2009) ("There is no constitutional right that protects against the deprivation of liberty as a result of negligently gathered evidence.").

Plaintiffs' allegations lack sufficient facts to show that defendants intentionally or recklessly fabricated or withheld evidence. With respect to the defendants who obtained the evidence against plaintiff, including defendants Hamilton, Rupp, and Goode-Eatmon, the complaint is littered with conclusory statements which the court need not accept. The facts alleged do not show that defendants fabricated any evidence, but rather that they failed to properly evaluate the evidence that was obtained from the alleged victims. The complaint includes bare allegations that defendants "failed to recognize" certain inconsistencies or impossibilities in the reports they received from the alleged victims, which lack details as to the specific inconsistencies at issue, or explanations as to how certain findings or statements were impossible. (E.g., Compl., ¶ 82). At best, plaintiff has set forth facts to show negligence in the investigation, not reckless or intentional manipulation of

---

[3] Washington declined to address whether claims of this nature are barred by Heck when the state court conviction remains in place, because the argument was raised for the first time in the defendant's reply brief. Washington, 407 F.3d at 280, n. 6. The court assumes for the purposes of the instant complaint that Heck does not bar such claims.

11

evidence. To the extent his section 1983 claim rests on fabricating or hiding evidence, it must be dismissed.

In his objections, plaintiff argues that neither the Sheriff's Department nor DSS complied with section 7B-307(a) of the North Carolina General Statutes, which outlines a procedure for the reporting of evidence of child abuse from the county's director of social services to the district attorney and local law enforcement, which is to be followed by a criminal investigation within 48 hours.[4] Plaintiff asserts that the failure to abide follow this reporting and investigation process constitutes an equal protection violation.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (quoting Sioux City Bridge Co. v. Dakota Cnty., Neb., 260 U.S. 441, 445 (1923)). Equal protection claims typically involve government classifications that target a group of citizens. See Engquist v. Or. Dep't of Agr., 553 U.S. 591, 601 (2008). However, such a claim may also be brought when an individual alleges that

---

[4] Specifically, the provides in relevant part as follows:

> If the director [of the county department of social services] finds evidence that a juvenile may have been abused as defined by G.S. 7B-101, the director shall make an immediate oral and subsequent written report of the findings to the district attorney or the district attorney's designee and the appropriate local law enforcement agency within 48 hours after receipt of the report. The local law enforcement agency shall immediately, but no later than 48 hours after receipt of the information, initiate and coordinate a criminal investigation with the protective services assessment being conducted by the county department of social services. Upon completion of the investigation, the district attorney shall determine whether criminal prosecution is appropriate and may request the director or the director's designee to appear before a magistrate.

N.C. Gen. Stat.§ 7B-307(a).

he has been irrationally treated as a "class of one." Id.  A "class of one" claim requires plaintiff to allege 1) "that [ ]he has been intentionally treated differently from others similarly situated," and 2) "that there is no rational basis for the difference in treatment."  Olech, 528 U.S. at 564.

Plaintiff does not allege membership in a group or class, and his allegations fail on both elements of a "class of one" claim.  He does not allege that the Sheriff's Department Defendants or DSS Defendants treated any other similarly situated person in a different manner, or that these defendants acted intentionally in doing so.  Nor do the allegations show that the departments acted on any irrational basis.

Furthermore, defendant has not even alleged sufficient facts to establish that defendants in fact failed to comply with section 7B-307.  Plaintiff's argument is based on his allegation that an interview and examination was conducted on his alleged victims on April 15, 2008, and that arrest warrants did not issue until June 11 of that year.  From this fact, plaintiff infers that neither department properly notified the district attorney's office of the receipt of any evidence.  The inference is unwarranted, and the court need not accept it.  The fact that arrest warrants did not issue until June 11, 2008, does not mean that the district attorney's office did not receive any report regarding the offenses prior to that date.

Plaintiff also objects to the dismissal of his jailer, defendant McRainey.  The only allegation regarding defendant McRainey is that McRainey ignored a written request "for reasonable access to help." (Compl., ¶ 64).  This bare allegation presents insufficient facts to establish a deprivation of any right protected under section 1983, or to show defendant McRainey was engaged in a section 1985(2) conspiracy.

13

Case 5:14-cv-00587-FL   Document 8   Filed 06/17/15   Page 13 of 15

Plaintiffs' allegations do not raise anything more than conclusory allegations of a section 1985(2) conspiracy against these defendants, and thus that claim must too be dismissed. See A Soc'y Without A Name, 655 F.3d at 346.

For these reasons, plaintiff fails to state a claim against the Sheriff's Department Defendants or DSS Defendants, and these defendants must be dismissed.[5]

5. Attorney General's Office

Finally, plaintiff objects to the dismissal of his claims against defendants Cooper and Aldridge ("Attorney General Defendants"). Plaintiff alleges that Attorney General Defendants declined to conduct an investigation into his arrest and indictment after he sent them a letter.

The analysis provided above regarding plaintiffs' section 1983 claims premised on the fabrication of evidence, false arrest, and malicious prosecution is equally applicable to bar these claims against Attorney General Defendants as well. In addition to this analysis, the court observes that it is unclear what information plaintiff included in his letter to defendant Cooper, or what action he proposes defendant Cooper should have taken. Notably, North Carolina law grants the Attorney General only limited ability to influence district attorneys or law enforcement. See State v. Loesch, 237 N.C. 611, 614 (1953) ("The Attorney General has no constitutional authority to issue a directive to any other constitutional officer concerning his legal duties."); see also Eisenhauer v. Cooper, No. 5:12-CV-459-D, 2012 WL 6677668, at *2 (E.D.N.C. Dec. 21, 2012) ("Under North Carolina law, Cooper lacks such 'supervisory oversight' of [Cumberland County District Attorney]."); State v. Camacho, 329 N.C. 589, 594 (1991) (holding trial court exceeded its authority in ordering Attorney

---

[5] Plaintiff did not specifically object to the M&R recommendation to dismiss defendant Gutman, who was also involved in the investigation and collection of evidence against plaintiff. To the extent the foregoing analysis supplements the analysis in the M&R regarding Sheriff's Department and DSS Defendants, it equally applies to defendant Gutman and offers additional grounds warranting her dismissal as well.

14

General to assume prosecution of case because Attorney General's Special Prosecution Division could prosecute criminal cases "*only if requested* to do so by the appropriate District Attorney."); State v. Felts, 79 N.C. App. 205, 212 (1986) (holding that Attorney General could not remove sheriff or police officer from office because the Attorney General has "the authority to advise the prosecutors, not to completely replace them, or act instead of them, unless there is an express statutory provision authorizing the Attorney General to initiate a particular action.").

The facts alleged do not trigger any duty for the Attorney General to act under those powers and duties granted to him under North Carolina's Constitution and General Statutes. N.C. Const. art. III, § 7; N.C. Const. art. IV, § 18; N.C. Gen. Stat. §§ 114-1.1; 114-2. The allegations are insufficient to establish that Attorney General defendants deprived plaintiff of any right protected under section 1983, or that they engaged in a section 1985(2) conspiracy. Accordingly, dismissal of these defendants is also proper.

## CONCLUSION

Based on the foregoing, upon *de novo* review of those portions of the M& to which specific objections were raised, and considered review of those portions to which no such objections were made, the court ADOPTS the M&R's recommendation. Plaintiff's action is DISMISSED pursuant to 28 U.S.C. § 1915A(b). The clerk is directed to close this case.

SO ORDERED, this the 17th day of June, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge

15

Case 5:14-cv-00587-FL   Document 8   Filed 06/17/15   Page 15 of 15